UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ESTATE OF CLINTON MCDONALD                                     PLAINTIFF

v.                                                            CIVIL ACTION NO. 3:12-CV-577

INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff Estate of Clinton McDonald (the "Estate") brings this action pursuant to the "private cause of action" provision of the Medicare Secondary Payer Act ("MSP"). 42 U.S.C. § 1395y(b)(3)(A). Presently before the court are a motion to dismiss for failure to state a claim made by Defendant Indemnity Insurance Company of North America ("Indemnity") (DN 14) and a motion for summary judgment made by the Estate (DN 16).

**I.**

Clinton McDonald ("McDonald") was employed by O'Reilly Auto Parts. Indemnity was the worker's compensation insurance carrier for O'Reilly. On May 10, 2007, McDonald was in a motor vehicle accident while acting within the course and scope of his duties as an employee of O'Reilly Auto Parts. McDonald suffered severe injuries as a result of the accident. On November 5, 2007, he passed away. At the time of the accident, McDonald was a Medicare recipient. Medicare paid $180,185.75 in medical bills to treat McDonald between the accident and his death.

O'Reilly disputed whether McDonald's death was caused by the work-related accident. On December 28, 2009, the Kentucky Workers' Compensation Board found that McDonald's death was

caused by the accident. The Worker's Compensation Board ordered O'Reilly or its worker's compensation insurance carrier to pay for McDonald's medical expenses. After the Estate moved to reconsider portions of the Worker's Compensation Board opinion and order, the Worker's Compensation Board issued an order on March 9, 2010 amending its earlier opinion and order, although not as to its conclusion that O'Reilly or its worker's compensation insurance carrier were required to pay for McDonald's medical expenses.

On September 13, 2012, the Estate filed this lawsuit alleging that Indemnity was required under the MSP to reimburse Medicare for the medical expenses of McDonald that Medicare had paid. The Estate further alleged that under the private cause of action provision of the MSP, the Estate could recover damages in an amount twice what Medicare paid for McDonald's medical expenses.

After the Estate filed its complaint, Indemnity received a Conditional Payment Letter from the Medicare Secondary Payer Recovery Contractor ("Medicare") that was dated September 18, 2012. That Conditional Payment Letter stated that Medicare had made $181,326.38 in conditional payments for McDonald's healthcare. The letter requested that Indemnity "refrain from sending any monies to Medicare prior to submission of settlement information and receipt of a demand/recovery calculation letter from [Medicare's] office," so as to "eliminate underpayments, overpayments, and/or associated delays." Then, on October 25, 2012, Medicare issued Indemnity a "Final Demand Letter" asking that Indemnity pay $184,514.24. The Final Demand Letter stated that interest would be assessed on that amount if it was not fully resolved within 60 days of the date of the letter. On December 11, 2012, Indemnity issued a check to Medicare for $184,514.24. A January 11, 2013 letter from Medicare acknowledged receipt of the check and stated that the amount due had been

reduced to zero.

On February 25, 2013, Indemnity filed a motion to dismiss the Estate's complaint. The Estate responded, arguing that Indemnity's motion to dismiss should be treated as a motion for summary judgment and denied. The Estate also filed its own motion for summary judgment.

**II.**

Initially, the court must determine whether to treat Indemnity's motion as a motion to dismiss (as Indemnity contends it is) or as a motion for summary judgment (as the Estate believes is appropriate). In the motion, Indemnity relies on various documents concerning events that occurred after the complaint was filed in this case; specifically, Indemnity relies on evidence concerning Medicare's post-complaint letters to it and the payment it made to Medicare. Indemnity contends that the court may nonetheless consider those documents as part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Although the general rule is that matters outside the pleadings may not be considered in ruling on a Rule 12(b)(6) motion unless the motion is converted to a summary judgment motion, there are exceptions to that general rule. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim," and courts are also permitted to "consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Id.*

Indemnity states that the September 18, 2013 Conditional Payment Letter qualifies as a document that is referred to in the Estate's complaint and is central to the Estate's claim. The court

has difficulty understanding that argument, as that letter is dated five days after the complaint was filed in this court.[1] Indemnity also suggests that the other exhibits it submits with its motion to dismiss – a Final Demand Letter, a copy of the check Indemnity sent to Medicare, and Medicare's letter acknowledging receipt of the check and a zero balance – constitute public records or matters of which the court may take judicial notice. Those exhibits are correspondence between a government agency and a private party, as well as a private party's check to a government agency. Indemnity cites to no authority for the proposition that such correspondence between a private party and a government agency are public records or are matters of which the court may take judicial notice. Without such authority, the court is unwilling to declare the documents fit for consideration on a motion to dismiss. The court thus finds it appropriate to convert Indemnity's motion to dismiss into a motion for summary judgment. We turn to the merits of the parties' motions.

### III.

#### A.

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which a jury could reasonably find for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-

---

[1] To be sure, paragraph five of the Estate's complaint does reference a Conditional Payment Letter. In that paragraph of the complaint, the Estate alleged that Medicare paid approximately $180,185.75 for McDonald's medical care. The Estate thus referenced and attached a portion of a document, which the Estate called a Conditional Payment Letter, that contained a list of medical bills paid by Medicare. But the portion attached to the complaint contains the date March 3, 2011. Simply put, it is apparent that whatever Conditional Payment Letter is referenced in the complaint is not the one that Indemnity relies on and that was issued after the complaint was filed.

moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). Finally, the evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

B.

Medicare is a federal government health insurance program that provides benefits to individuals that are 65 years of age or older, disabled, or have end-stage renal disease. 42 U.S.C. § 1395c. Although Medicare was at one time the primary payer of health costs for eligible individuals, escalating health care costs led Congress to enact the MSP. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir. 2008). The MSP "designates certain private entities – such as a group health plan, a worker's compensation plan, or an automobile or liability insurance plan – as 'primary payers' that have the responsibility to pay for a person's medical treatment." *Id.* Medicare thus does not have to pay if payment for covered medical services has been or is reasonably expected to be made by a primary payer. *See id.*; 42 U.S.C. § 1395y(b)(2)(A). However, "[i]f the primary payer has not paid and will not promptly do so," Medicare is empowered to "conditionally pay the cost of the treatment." *Stalley v. Methodist Healthcare*, 517 F.3d at 915; *see* 42 U.S.C. § 1395y(b)(2)(B)(i). Medicare may then seek reimbursement for any conditional medical payments from the primary payer. *Stalley v. Methodist Healthcare*, 517 F.3d at 915; 42 U.S.C. § 1395y(b)(2)(B)(iii).

In addition, "[t]he MSP also creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights." *Stalley v. Methodist Healthcare*, 517 F.3d at 916 (quoting *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1307 (11th Cir. 2006) (citing 42 U.S.C. § 1395y(b)(3)(A))). The

private cause of action provision states, "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). Paragraph (1) imposes certain requirements on group health plans, including, *inter alia*, prohibiting them from taking into account whether an individual covered by the plan is entitled to Medicare benefits. *See Bio-Med. Applications of Tenn., Inc. v. Cent. States Southeast & Soutwest Areas Health & Welfare Fund*, 656 F.3d 277, 285 (6th Cir. 2011). Paragraph (2)(A) states that Medicare "may not pay when a primary plan is reasonably expected to pay under paragraph (1), 'except as provided in subparagraph [2](B).'" *Id.* In turn, subparagraph (2)(B) provides that Medicare may make conditional payments for items and services when the primary plan "'cannot reasonably be expected' to pay 'promptly.'" *Id.* In *Stalley v. Catholic Health Initiatives*, the Eighth Circuit discussed the purpose of the private cause of action provision:

> Courts considering the provision have generally agreed that the apparent purpose of the statute is to help the government recover conditional payments from insurers or other primary payers. . . .
>
> The thinking behind the statute is apparently that (1) the beneficiary can be expected to be more aware than the government of whether other entities may be responsible to pay his expenses; (2) without the double damages, the beneficiary might not be motivated to take arms against a recalcitrant insurer because Medicare may have already paid the expenses and the beneficiary would have nothing to gain by pursuing the primary payer; and (3) with the private right of action and the double damages, the beneficiary can pay back the government for its outlay and still have money left over to reward him for his efforts.

509 F.3d 517, 524-525 (2007) (internal citations omitted).

## C.

The court begins with three arguments Indemnity makes that, insofar as they relate to whether the Estate's claim was ripe when it was filed or whether it is now moot, touch upon this court's jurisdiction to hear the case. Indemnity argues: (1) that the claim was not ripe at the time the complaint was filed because Medicare had yet to make any demand on Indemnity to reimburse it for the conditional payments; (2) that the claim was premature because Medicare had not yet determined the final amount Indemnity owed it; and (3) that Indemnity's payment to Medicare in accordance with the Final Demand Letter rendered the case moot.

The court disagrees with Indemnity's arguments that the Estate's claim was not yet ripe when it was filed or that it has since been rendered moot. As to the ripeness issues, nothing in the private cause of action provision indicates that such a claim can only be brought once Medicare demands reimbursement or makes a final tally of the amount it is owed. To the contrary, the purpose of the private cause of action provision appears to be to encourage beneficiaries to bring actions in instances where Medicare is unaware that it should be reimbursed. In such a situation, there would, of course, be no Medicare demand for reimbursement prior to the action being filed, nor would Medicare have yet determined how much it is owed as reimbursement.

As to Indemnity's argument that its payment to Medicare rendered this case moot, such a holding would be contrary to the language of the private cause of action provision. The private cause of action provision allows for damages "in an amount double the amount otherwise provided" – the purpose being to encourage beneficiaries to bring claims even if Medicare has already paid the beneficiaries' expenses. Once a private cause of action claim has been lodged against a defendant, a defendant cannot escape the double damages provided for in that provision by paying single

damages to Medicare.

D.

Although the court does not find that the case was unripe when filed, nor does it find that it has since been mooted, the court nevertheless reaches the conclusion that the Estate has no claim under the private cause of action provision. As noted above, the Estate has filed a motion for summary judgment, requiring this court to further delve into the meaning of that provision of the MSP to determine whether the Estate has put forth evidence sufficient to prove its claim. The court believes that the language of the statute does not allow for the Estate's claim against Indemnity.

The Estate contends that it is entitled to summary judgment because its complaint spurred Indemnity to pay Medicare. Thus, the Estate states that Indemnity admitted that it is a primary plan that, at the time the complaint was filed, was required to, but had not, paid Medicare. The Estate concludes that its suit "accomplished exactly what the MSP[] private cause of action was meant to accomplish – an errant worker's compensation carrier has now paid Medicare what it owed Medicare for the past two years."

In arguing against the Estate's summary judgment motion, Indemnity points this court to the Sixth Circuit's opinion in *Bio-Medical Applications of Tennessee, Inc. v. Central States Southeast and Southwest Areas Health and Welfare Fund*, 656 F.3d 277 (6th Cir. 2011). In that case, a group health plan had terminated a planholder's coverage because the planholder was eligible for Medicare benefits. *Bio-Medical*, 656 F.3d at 280. Medicare thereafter paid some medical costs of the planholder. *Id.* Thereafter, a claim under the MSP private cause of action provision was brought against the group health plan.

The Sixth Circuit expounded at length on the construction of the private cause of action

provision. It noted that the provision "uses the conjunctive: it requires that the primary plan fail to make payment 'in accordance with paragraphs (1) *and* (2)(A).'" *Bio-Medical*, 656 F.3d at 285 (quoting 42 U.S.C. § 1395y(b)(3)(A) (emphasis added)). It then considered the meaning of paragraphs (1) and (2)(A). The Sixth Circuit noted that "[p]aragraph (1), entitled '[r]equirements of group health plans,' essentially lays out a system of rules instructing when group health plans must pay for medical items and services." *Id.* (quoting 42 U.S.C. § 1395y(b)(1)). In particular, "[t]he first three subparagraphs of paragraph (1) prevent group health plans from 'taking into account' that a planholder is entitled to Medicare benefits due to being (a) at least sixty-five years old, (b) disabled, or (c) diagnosed with end-stage renal disease." *Id.* Turning to paragraph (2), the Sixth Circuit noted that it is split into subparagraphs (2)(A) and (2)(B) and, generally speaking, "instructs when Medicare may or may not pay for medical items and services." *Id.*

Although the Sixth Circuit expressed some puzzlement at how a primary plan may fail to pay in accordance with subparagraph (2)(A), which was directed at when *Medicare* could or could not pay for medical services, the Sixth Circuit resolved to interpret the private cause of action provision in a manner that would not render it totally inoperative. *Bio-Medical*, 656 F.3d at 286. Thus, the Sixth Circuit stated that paragraphs (1) and (2)(A) should be considered "collectively." *Id.* It held that, as pertained to that case, "a primary plan fails to pay 'in accordance with paragraphs (1) and (2)(A)' when it terminates a planholder's coverage and thereby induces Medicare to make a conditional payment on its behalf–that is, when the primary plan violates the statutory system that these two paragraphs set into motion." *Id.*

Applying the Sixth Circuit's text-based interpretation of the private cause of action provision to the circumstances in this case, the court is forced to conclude that the Estate cannot establish a

cause of action. Specifically, *Bio-Medical* makes clear that use of the conjunctive in the private cause of action provision is meaningful. Thus, the Estate must establish that Indemnity somehow violated paragraph (1). This it cannot do. As the Sixth Circuit stated, paragraph (1) "essentially lays out a system of rules instructing when *group health plans* must pay for medical items and services." *Bio-Medical*, 656 F.3d at 285 (emphasis added). Indeed, it is entitled "[r]equirements of group health plans." 42 U.S.C. § 1395y(b)(1). Thus, the question is whether Indemnity, which is a worker's compensation insurer, is a "group health plan." The court believes that it is not.

A "group health plan" is defined as "a plan (including a self-insured plan) of, or contributed to by, an employer (including a self-employed person) or employee organization to provide health care (directly or otherwise) to the employees, former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families." 26 U.S.C. § 5000(b)(1); 42 U.S.C. § 1395y(b)(1)(A)(v). While it may be arguable whether a worker's compensation plan could fit within that definition, other language in the MSP statute, as well as a Medicare regulation, strongly suggest that a worker's compensation plan is not included within the definition of a group health plan.

As for the MSP statute, subparagraph (2)(A) provides that Medicare may not make a payment in two situations:

> (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or
>
> (ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

42 U.S.C. § 1395y(b)(2)(A) (emphasis added). That provision thus draws a clear dichotomy between

payments required under paragraph (1), which sets forth requirements for group health plans, and payments required by worker's compensation laws or plans (as well as auto and liability insurance plans). Subparagraph (2)(A) then continues to define a "primary plan" as "a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies." *Id.* Thus, subparagraph (2)(A) confirms that the "group health plans" addressed in paragraph (1) does not include worker's compensation laws or plans. Medicare regulations define a primary plan in similar terms as subparagraph (2)(A), stating that a primary plan includes, amongst other things, both a "group health plan" and a "workers' compensation law or plan." 42 C.F.R. § 411.21.

As it appears from the language of the MSP and from the Medicare regulation that Indemnity, a worker's compensation insurer, is not a "group health plan," the court concludes that Indemnity cannot fail to pay in accordance with paragraph (1). And because the Sixth Circuit has concluded that the use of the conjunctive in the private cause of action provision requires that the defendant fail to pay in accordance with both paragraph (1) and subparagraph (2)(A), this court must conclude that the Estate cannot establish a private cause of action claim against Indemnity. Thus, its summary judgment motion must be denied.

To be sure, the court notes that its holding would seem to take some of the wind out of the sails of the private cause of action provision. The court's holding means, in essence, that only a "group health plan" may possibly be liable under that provision, even though other types of entities may be primary payers that fail to pay or reimburse Medicare. Nevertheless, the Sixth Circuit's holding in *Bio-Medical* and the language of the statute appear to the court to compel this holding.

However, as neither party has directly addressed the issue identified by the court in its review of whether the Estate may obtain a summary judgment, the court will decline to enter summary judgment in either party's favor, thus providing the parties with an opportunity to address the court's conclusions about the language of the statute.

## IV.

For all the reasons stated above and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that Indemnity's motion to dismiss (DN 14) is **CONVERTED** to a motion for summary judgment and **DENIED**, and the Estate's motion for summary judgment (DN 16) is **DENIED**.

September 25, 2013

**Charles R. Simpson III, Senior Judge
United States District Court**