UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ESTATE OF CLINTON MCDONALD                                                         PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:12-CV-577

INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA                                                        DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff Estate of Clinton McDonald (the "Estate") brings this action pursuant to the "private cause of action" provision of the Medicare Secondary Payer Act ("MSPA"). 42 U.S.C. § 1395y(b)(3)(A). The court previously denied a motion to dismiss for failure to state a claim made by Defendant Indemnity Insurance Company of North America ("Indemnity") (DN 14) and a motion for summary judgment made by the Estate (DN 16). In so doing, the court indicated that its reading of the case of *Bio-Medical Applications of Tennessee, Inc. v. Central States Southeast and Southwest Areas Health and Welfare Fund*, 656 F.3d 277 (6th Cir. 2011) compelled the conclusion that the Estate could not establish a cause of action against Indemnity under the MSPA. However, as neither party had directly addressed the conundrum caused by various inconsistencies in the statute and *Bio-Medical*'s interpretation of the those provisions, the court declined to enter judgment in either party's favor, and affording the parties an opportunity to address the court's conclusions about the language of the statute in light of *Bio-Medical.*

The parties filed cross-motions for summary judgment. DNs 27; 28. After briefing was completed, the United States Court of Appeals for the Sixth Circuit decided *Michigan Spine and

*Brain Surgeons, PLLC v. State Farm Mutual Automobile Insurance Company*, No. 13-2430, 2014 WL 3440644 (6th Cir. July 16, 2014). The Estate filed a notice of the issuance of the *Michigan Spine* decision, noting that the case is directly on point supporting the Estate's position that it does have a viable cause of action. Indemnity has not commented on this new authority. For the reasons set forth herein, the court concludes that the Estate is entitled to summary judgment against Indemnity in this matter for $184,514.24.00.

## I.

Clinton McDonald ("McDonald") was employed by O'Reilly Auto Parts.[1] Indemnity was the worker's compensation insurance carrier for O'Reilly. On May 10, 2007, McDonald was in a motor vehicle accident while acting within the course and scope of his duties as an employee of O'Reilly Auto Parts. McDonald suffered severe injuries as a result of the accident. On November 5, 2007, he passed away. At the time of the accident, McDonald was a Medicare recipient. Medicare paid $180,185.75 in medical bills to treat McDonald between the accident and his death.

O'Reilly disputed whether McDonald's death was caused by the work-related accident. On December 28, 2009, the Kentucky Workers' Compensation Board found that McDonald's death was caused by the accident. The Worker's Compensation Board ordered O'Reilly or its worker's compensation insurance carrier to pay for McDonald's medical expenses. After the Estate moved to reconsider portions of the Worker's Compensation Board opinion and order, the Worker's Compensation Board issued an order on March 9, 2010 amending its earlier opinion and order, although not as to its conclusion that O'Reilly or its worker's compensation insurance carrier were required to pay for McDonald's medical expenses.

---

[1] Much of this opinion is taken verbatim from the court's September 26, 2013 Memorandum Opinion and Order. DN 21.

On September 13, 2012, the Estate filed this lawsuit alleging that Indemnity having failed to reimburse Medicare for the medical expenses of McDonald that Medicare had paid, the Estate was entitled to a double recovery of that sum under the private cause of action provision of the MSPA. After the Estate filed its complaint, Indemnity received a Conditional Payment Letter from the Medicare Secondary Payer Recovery Contractor ("Medicare") that was dated September 18, 2012. That Conditional Payment Letter stated that Medicare had made $181,326.38 in conditional payments for McDonald's healthcare. The letter requested that Indemnity "refrain from sending any monies to Medicare prior to submission of settlement information and receipt of a demand/recovery calculation letter from [Medicare's] office," so as to "eliminate underpayments, overpayments, and/or associated delays." Then, on October 25, 2012, Medicare issued Indemnity a "Final Demand Letter" asking that Indemnity pay $184,514.24. The Final Demand Letter stated that interest would be assessed on that amount if it was not fully resolved within 60 days of the date of the letter. On December 11, 2012, Indemnity issued a check to Medicare for $184,514.24. A January 11, 2013 letter from Medicare acknowledged receipt of the check and stated that the amount due had been reduced to zero.

On February 25, 2013, Indemnity filed a motion to dismiss the Estate's complaint. The Estate responded, arguing that Indemnity's motion to dismiss should be treated as a motion for summary judgment and denied. The Estate also filed its own motion for summary judgment.

The court undertook to decide the two motions. At that point in time, the *Bio-Medical* case provided the best guidance for this court's analysis of whether Indemnity, a worker's compensation plan, could be liable under the private cause of action provision of the MSPA. The court found that the holding of *Bio-Medical* meant, "in essence, that only a 'group health plan' may possibly be liable

under [42 U.S.C. §§ 1395y(b)(1) and (2)(A)] even though other types of entities may be primary payers that fail to pay or reimburse Medicare. Nevertheless, the Sixth Circuit's holding in *Bio-Medical* and the language of the statute appear to the court to compel this holding." DN 21, p. 11.

The parties filed a second round of briefs addressing the viability of the Estate's claim against Indemnity under the MSPA. However, the Sixth Circuit's decision last month in *Michigan Spine* now controls our decision.

**II.**

A.

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which a jury could reasonably find for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). Finally, the evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

B.

Medicare is a federal government health insurance program that provides benefits to individuals that are 65 years of age or older, disabled, or have end-stage renal disease. 42 U.S.C. § 1395c. Although Medicare was at one time the primary payer of health costs for eligible individuals, escalating health care costs led Congress to enact the MSPA. *Stalley v. Methodist Healthcare*, 517

under [42 U.S.C. §§ 1395y(b)(1) and (2)(A)] even though other types of entities may be primary payers that fail to pay or reimburse Medicare. Nevertheless, the Sixth Circuit's holding in *Bio-Medical* and the language of the statute appear to the court to compel this holding." DN 21, p. 11.

The parties filed a second round of briefs addressing the viability of the Estate's claim against Indemnity under the MSPA. However, the Sixth Circuit's decision last month in *Michigan Spine* now controls our decision.

**II.**

A.

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which a jury could reasonably find for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). Finally, the evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

B.

Medicare is a federal government health insurance program that provides benefits to individuals that are 65 years of age or older, disabled, or have end-stage renal disease. 42 U.S.C. § 1395c. Although Medicare was at one time the primary payer of health costs for eligible individuals, escalating health care costs led Congress to enact the MSPA. *Stalley v. Methodist Healthcare*, 517

F.3d 911, 915 (6th Cir. 2008). The MSPA "designates certain private entities – such as a group health plan, a worker's compensation plan, or an automobile or liability insurance plan – as 'primary payers' that have the responsibility to pay for a person's medical treatment." *Id.* Medicare thus does not have to pay if payment for covered medical services has been or is reasonably expected to be made by a primary payer. *See id.*; 42 U.S.C. § 1395y(b)(2)(A). However, "[i]f the primary payer has not paid and will not promptly do so," Medicare is empowered to "conditionally pay the cost of the treatment." *Stalley*, 517 F.3d at 915; *see* 42 U.S.C. § 1395y(b)(2)(B)(i). Medicare may then seek reimbursement for any conditional medical payments from the primary payer. *Stalley*, 517 F.3d at 915; 42 U.S.C. § 1395y(b)(2)(B)(iii).

In addition, "[t]he MSPA also creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights." *Stalley*, 517 F.3d at 916 (quoting *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1307 (11th Cir. 2006) (citing 42 U.S.C. § 1395y(b)(3)(A))). The private cause of action provision states, "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). Paragraph (1) imposes certain requirements on group health plans, including, *inter alia*, prohibiting them from taking into account whether an individual covered by the plan is entitled to Medicare benefits. *See Bio-Medical*, 656 F.3d at 285. Paragraph (2)(A) states that Medicare "may not pay when a primary plan is reasonably expected to pay under paragraph (1), 'except as provided in subparagraph (2)(B).'" *Id.* In turn, subparagraph (2)(B) provides that Medicare may make conditional payments for items and services when the primary plan "'cannot

reasonably be expected' to pay 'promptly.'" *Id.* In *Stalley v. Catholic Health Initiatives*, the Eighth Circuit discussed the purpose of the private cause of action provision:

> Courts considering the provision have generally agreed that the apparent purpose of the statute is to help the government recover conditional payments from insurers or other primary payers. . . .
>
> The thinking behind the statute is apparently that (1) the beneficiary can be expected to be more aware than the government of whether other entities may be responsible to pay his expenses; (2) without the double damages, the beneficiary might not be motivated to take arms against a recalcitrant insurer because Medicare may have already paid the expenses and the beneficiary would have nothing to gain by pursuing the primary payer; and (3) with the private right of action and the double damages, the beneficiary can pay back the government for its outlay and still have money left over to reward him for his efforts.

509 F.3d 517, 524-525 (2007) (internal citations omitted). While the purpose for the private right of action provision appears clear, application of the statute's requirements to various claims is not so easily discerned. While this court extrapolated from the analysis in *Bio-Medical* that there could be no private right of action against a non-group health plan, *Michigan Spine* holds to the contrary.

C.

The Estate contends that it is entitled to summary judgment because its complaint spurred Indemnity to pay Medicare, and that its suit accomplished what the MSPA private cause of action was meant to accomplish – an errant worker's compensation carrier has now paid Medicare what it owed Medicare for the past two years. DN 28-1, p. 12. Indemnity initially denied the claim, as O'Reilly disputed that McDonald's death was caused by a work-related accident. After the Worker's Compensation Board concluded that McDonald's death was caused by the accident and ordered O'Reilly or its carrier to pay McDonald's medical expenses, Indemnity did not notify or

seek to reimburse Medicare. It did reimburse Medicare in full within sixty days of its receipt of Medicare's request for payment, however, this occurred only after McDonald filed this lawsuit.

In *Michigan Spine*, the Court of Appeals stated that the "case presents the question of whether a health care provider can bring the Medicare Secondary Payer Act's private cause of action against a non-group health plan that denies coverage for a reason besides Medicare eligibility. We hold that it can." *Michigan Spine*, 2014 WL 3440644 at *1-2.

In that case, State Farm's insured was injured in an automobile accident. Michigan Spine provided approximately $26,000.00 of neurological treatment to her. When Michigan Spine submitted the claim, State Farm denied coverage on the ground that the insured's condition was the result of a preexisting condition. Michigan Spine then submitted the claim to Medicare which approved conditional payment of $5,000.00 pursuant to the MSPA. Michigan Spine brought suit against State Farm, asserting a claim for payment of benefits under Michigan's No-Fault Act and a claim for damages under the MSPA for failure to pay medical expenses for which State Farm was responsible. After the district court dismissed, the Court of Appeals reversed and remanded.

The Court of Appeals found itself "[d]etermining what is required so as to trigger the availability of the private cause of action–despite the Act's convoluted and 'torturous' text, [quoting *Bio-Medical,* 656 F.3d at 279]." The court concluded at the outset that it was not bound by the *Bio-Medical* decision, as the *Bio-Medical* panel was faced with a claim against a group health plan under the private cause of action provision, whereas Michigan Spine claimed against State Farm, a no-fault insurer. The *Michigan Spine* panel reasoned that

> While it is true that *Bio-Medical* stated that *primary plans* rather than *group health plans* must meet the requirements of paragraphs (1) *and* (2)(A), this does not provide a basis to conclude that *Bio-Medical* was addressing the non-group health plan issue faced here. As a result, we find *Bio-Medical* distinguishable. *See generally Rinard*

*v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006)(observing that "questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

2014 WL 3440644 at *7.

The *Michigan Spine* panel then parted ways with *Bio-Medical*, holding that "the regulations lead to the conclusion that paragraph (1)'s requirement of taking Medicare eligibility into account concerns only group health plans and not non-group health plans, which means that Michigan Spine's claim against State Farm may proceed irrespective of the fact that State Farm denied coverage on a basis other than Medicare eligibility." 2014 WL 3440644 at *8.

Similar facts are presented in the case at bar. The initial claim was denied by Indemnity, a non-group health plan, as O'Reilly contended that McDonald's death was not caused by a work-related accident. Thus Indemnity's denial was not based on McDonald's Medicare eligibility. However, as provision (1) applies only to group health plans, the Estate has stated a viable claim for double damages under MSPA.

Indemnity's fallback position is that since it paid according to instructions following receipt of the Conditional Payment Letter from Medicare, it did not fail to provide appropriate reimbursement as set forth in 42 U.S.C. § 1395y(3)(A). (DN 27-1, pp. 9-10. The court has already found that such a holding would be contrary to the language of the private cause of action provision. The private cause of action provision allows for damages "in an amount double the amount otherwise provided" – the purpose being to encourage beneficiaries to bring claims even if Medicare has already paid the beneficiaries' expenses. Once a private cause of action claim has been lodged against a defendant, a defendant cannot escape the double damages provided for in that provision by paying single damages to Medicare. DN 21, pp. 7-8. The court has been offered no reason to

question this conclusion. Indemnity's "no harm; no foul" argument disregards the two years between the order for payment by O'Reilly or its carrier from the Worker's Compensation Board and the filing of this suit during which Indemnity did nothing to notify or reimburse Medicare. As the Estate's filing of the suit prompted payment in the amount of $184, 514. 24, the Estate is entitled to the double damage in that amount to reward the Estate for its efforts. 509 F.3d at 525.

For the reasons set forth herein, Indemnity's motion for summary judgment will be denied, the Estate's motion for summary judgment will be granted, and judgment will be entered in favor of the Estate by separate order.

**IT IS SO ORDERED.**

August 28, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**